UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOSEPH EDWARD FLORKEVICZ,**<br><br>Plaintiff,<br><br>v.<br><br>**ASHLEY KRISTEN CURCIO***, et al.***,**<br><br>Defendants. | Civil Action No. 2:25-cv-02316 (SDW) (SDA)<br><br>**OPINION**<br><br>**November 7, 2025** |

**STACEY D. ADAMS, United States Magistrate Judge**

Before the Court is a Motion by *pro se* Plaintiff Joseph Edward Florkevicz ("Plaintiff"), for the appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1) (the "Motion"). (ECF No. 11). The motion is opposed by Defendant Care Plus NJ, Inc. ("Care Plus"). (ECF No. 19). The Court decides this motion without oral argument pursuant to Fed. R. Civ. P. 78. Having considered the Plaintiff's written submissions and arguments, and for the reasons set forth below, Plaintiff's Motion to appoint *pro bono* counsel is **DENIED**.

**I.   BACKGROUND**

Plaintiff's factual allegations are set forth in the August 27, 2025 Amended Complaint as follows.[1] (ECF No. 40). Plaintiff brings this action for "serious psychological, physical, and civil rights violations by individuals and institutions with a duty to protect him." (*Id.* at 1). Plaintiff alleges that Defendant Ashley Kristen Curcio ("Curcio") acting in a professional capacity

---

[1] Plaintiff's original complaint (ECF No. 1) contained more detailed factual information that was omitted from his Amended Complaint. For purposes of the instant application, the Court relies only on the facts as set forth in the Amended Complaint, which is the current operative pleading.

1

"engaged in sexual coercion, financial exploitation, psychological manipulation, and physical violence against the Plaintiff." (*Id.* at 2). Defendant Ashley Gerolstein ("Gerolstein") served in a clinical supervisory role over Curcio, but failed to maintain professional standards and enabled abuse of Plaintiff through non-clinical practices such as astrology and tarot. (*Id.* at 2, 5). Plaintiff asserts that Care Plus had an institutional duty to protect him, "but failed by allowing Curcio unauthorized access and refusing to act on reports of abuse." (*Id.* at 2).

On April 3, 2025, Plaintiff, proceeding *pro se*, submitted his Complaint in this action, asserting claims pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Trafficking Victims Protection Act. (ECF No. 1). On April 8, 2025, the Court granted Plaintiff's application to proceed *in forma pauperis* ("IFP"). (ECF No. 3). Plaintiff's Complaint was then filed on April 9, 2025. On August 18, 2025, Plaintiff filed a Motion to Amend the Complaint to replace the pseudonym "Ashley Jane Doe" with "Ashley Gerolstein" (ECF No. 38), which motion was granted by the Court and the Amended Complaint was subsequently filed. (ECF No. 40).

On June 10, 2025, Plaintiff filed a motion seeking the appointment of *pro bono* counsel. (ECF No. 11). Plaintiff bases his request on "(1) the complexity of the legal and factual issues, (2) his limited legal capacity, (3) the extremely sensitive and technical nature of his claims, and (4) the demonstrable lack of access to critical information due to obstruction by opposing parties." (*Id.* at 2).

On July 7, 2025, Care Plus filed an opposition arguing, among other things, that that Plaintiff has significant litigation experience because he is presently litigating a case against the same parties in Bergen County Superior Court. (ECF No. 19). That docket has 476 docket entries, the majority of which are filings by Plaintiff including various motions, which evinces Plaintiff's access to legal tools to assist him in this litigation. (*Id.* at 3-4).

## II.     DISCUSSION

Generally, there is no right to counsel in a civil case. *See Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997) ("The Supreme Court has not recognized nor has the court of appeals found a constitutional right to counsel for civil litigants."); *see also Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, a court may appoint *pro bono* counsel if the court permits a litigant to proceed IFP. *See* 28 U.S.C. § 1915(e)(1) (where a litigant is proceeding IFP, "[t]he court may request an attorney to represent any person unable to afford counsel"); *see also* L. Civ. R. App. H. As the Court has allowed Plaintiff to proceed IFP pursuant to its April 9, 2025 order, it can proceed on the merits of Plaintiff's request for appointment of counsel.

Courts have broad discretion in determining whether to appoint counsel. *Houser v. Folino*, 927 F.3d 693, 698 (3d Cir. 2019) (citing *Tabron*, 6 F.3d at 153). In exercising that discretion, the Court first "must consider as a threshold matter the merits of the plaintiff's claim." *Tabron*, 6 F.3d at 155. Upon finding that this threshold showing has been made, "the court should then consider a number of additional factors that bear on the need for appointed counsel." *Id.* These factors may include:

> (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Parham*, 126 F.3d at 457; *see Tabron*, 6 F.3d at 156, 157 n.5. The Third Circuit noted that "this list of factors is not exhaustive, but should serve as a guidepost for the district courts." *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (quoting *Parham*, 126 F.3d at 457). It has also cautioned that care should be exercised in appointing counsel in civil actions, as "volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Id.* (citing *Parham*,

126 F.3d at 458). A court's decision to appoint counsel "must be made on a case-by-case basis." *Tabron*, 6 F.3d at 157-58. These factors apply to not only the initial request for counsel, but any successive applications. *Houser*, 927 F.3d at 698.

With these principles in mind, the Court first considers as a threshold matter whether Plaintiff's claims have "some arguable merit in fact and law." *Montgomery*, 294 F.3d at 498-99 (citing *Tabron*, 6 F.3d at 155). Plaintiff's Amended Complaint alleges that, he suffered "serious psychological, physical, and civil rights violations by individuals and institutions with a duty to protect him" (ECF No. 40 at 1). He alleges that Curcio engaged in "sexual coercion, financial exploitation, psychological manipulation, and physical violence" against him, and that Care Plus and Gerolstein allowed the abuse to occur and failed to take proper remedial action. (*Id.* at 2). For the purposes of this Motion only, this Court will assume that those allegations set forth a viable claim by Plaintiff and that the Amended Complaint has facial merit. *See Anderson v. Salerno*, No. 19-cv-19926 (BRM) (JAD), 2021 WL 11585761, at *1 (D.N.J. Feb. 11, 2021) (assuming solely for purposes of a *pro bono* motion that a plaintiff's case has some arguable merit in fact and law); *Muslim v. D'Ilio*, No. 15-cv-05796 (PGS) (DEA), 2018 WL 4522048, at *4 (D.N.J. Sept. 21, 2018) (same). The Court, therefore, turns to the *Tabron* factors to assess whether Plaintiff has met his burden to warrant appointment of counsel in this case.

The first *Tabron* factor considers "the plaintiff's ability to present his or her case," which may be measured by "the plaintiff's education, literacy, prior work experience, and prior litigation experience." *Tabron*, 6 F.3d at 156. This factor is "[p]erhaps the most significant of *Tabron*'s post-threshold factors." *Montgomery*, 294 F.3d at 501. Plaintiff does not allege that he is incompetent or illiterate, but claims he has "mental and learning disabilities that impair [his] ability to present evidence or make legal arguments." (ECF No. 11-1 at 5). He also explains that he lacks any formal legal training. (ECF No. 11 at 8). Contrary to these claims, Plaintiff has shown—through his ability

to file his own, detailed complaint, a successful application to proceed IFP, advocating for himself in front of this Court, and the filing of his coherent motions for alternative service and to amend his complaint—all indications that (i) he has access to resources such as books and computers to allow him to conduct the necessary research and prepare the appropriate paperwork to represent himself; and (ii) he has the competency and know-how to adequately represent himself in this matter. Further, Plaintiff wrote in his August 17, 2025 letter, "It's possible I'll get through these cases without help or advocacy. But I refuse to keep carrying the burden of doing everything exactly right – filing every motion perfectly, meeting every deadline, jumping through every legal hoop." (ECF No. 37 at 5). This suggests that Plaintiff has the ability to prosecute his own case, but feels it is unfair for him to carry the burden of doing so. This, however, is not the standard and the fact that Plaintiff feels he should have an attorney appointed to bear the burden of litigation does not justify the appointment of *pro bono* counsel. Further, Plaintiff's many submissions indicate that he is able to adequately read, write, and understand English, and that he understands the law and Court rules and is able to competently vindicate his rights. For these reasons, the Court finds that the first *Tabron* factor does not weigh in Plaintiff's favor.

The second *Tabron* factor requires the Court to assess the complexity of the legal issues in the case. *Tabron*, 6 F.3d at 156. Courts "should be more inclined to appoint counsel if the legal issues are complex." *Id.* (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). "[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." *Id.* (quoting *Maclin v. Freake*, 650 F.2d 885, 889 (7th Cir. 1981)). Plaintiff contends that the issues involved here are both factually and legally complex since his claims include severe constitutional and statutory violations. (ECF No. 11 at 2-3). He states that the case involves complex issues such as "mental health regulation, federal rights under the ADA, HIPAA privacy rules, and whistleblower

retaliation." (*Id.* at 8). Aside from these restatements of his causes of action, Plaintiff provides no explanation of why the legal issues are complex or difficult to understand. *See Araque v. Hudson Cnty. Bd. of Freeholders*, No. 22-cv-3704 (MEF) (JBC), 2024 WL 1987822, at *2 (D.N.J. May 6, 2024) (finding that the second *Tabron* factor weighed against appointment of counsel where plaintiff "failed to specify which of his claims, if any, present a question of unsettled law" and plaintiff did "not provide any support for his contention" that his claims were complex); *see also Greenfield v. Corzine*, No. 09-cv-4983 (DMC) (JAD), 2010 WL 4809029, at *2 (D.N.J. Nov. 17, 2010) (finding that the second *Tabron* factor weighed against appointment of counsel where plaintiff had "not demonstrated…that the factual claims are difficult to understand or that the legal issues involved are so complex such that the appointment of counsel is required"). A review of the Complaint does not indicate to the Court that the legal issues in this case are especially complex or will involve unsettled areas of the law. Accordingly, the second *Tabron* factor weighs against the appointment of counsel.

Turning to the third *Tabron* factor, the Court must examine "the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation." *Tabron*, 6 F.3d at 156 (citations omitted). "[W]here the claims are likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted." *Id.* (citation omitted). Plaintiff claims he is "overwhelmed by the complex legal and evidentiary demands, including organizing vast medical records and navigating multi-jurisdictional discovery." (ECF No. 11-1 at 3). He claims he has "been forced to rely on guesswork in motion drafting and discovery. . ." (ECF No. 11 at 4). However, discovery has not yet commenced in this matter and an initial pretrial scheduling order has not been entered on the docket. Plaintiff's concerns may be premature at this point in the litigation. The record does not indicate that Plaintiff would be unable to utilize the discovery tools made available to him under

the Federal Rules of Civil Procedure to investigate his claims. Plaintiff must "try to do so, using the resources at his disposal" before he can persuade the Court that he cannot effectively navigate the discovery process. *Anderson*, 2021 WL 11585761, at *1. The fact that Plaintiff has a lot of medical records, alone, is not sufficient to demonstrate that he cannot handle discovery without counsel. Thus, Court finds that the third *Tabron* factor is, at best, neutral and does not weigh in favor of appointment of counsel.

The fourth *Tabron* factor measures the degree to which "a case is likely to turn on credibility determinations." *Tabron*, 6 F.3d at 156. Generally, this factor weighs in favor of appointment of counsel only in circumstances where the trial is expected to be "solely a swearing contest." *Parham*, 126 F.3d at 460. It is unclear whether the case will turn on credibility determinations, or whether there will be documentary or other evidence that is central to the case. Therefore, the fourth factor does not support the appointment of *pro bono* counsel. *See Ryan v. Robinson*, No. 22-cv-1175 (RMB) (MJS), 2023 WL 3034130, at *3 (D.N.J. Apr. 21, 2023) ("It is unclear whether documents substantiating the parties' claims and defenses will be produced, or whether the parties will largely rely upon credibility." (citation omitted)); *Andrews v. Whittaker*, No. 13-cv-4812 (ES) (MAH), 2017 WL 935159, at *3 (D.N.J. Mar. 9, 2017) (finding the fourth *Tabron* factor neutral where the Court lacked information to determine whether the case would be "solely a swearing contest"); *Marley v. Donahue*, No. 14-cv-1597 (JBS) (JS), 2014 WL 12617284, at *3 (D.N.J. Oct. 20, 2014) (same). In support of his motion, Plaintiff states that "[t]he case will turn on credibility, especially regarding audio and medical evidence." (ECF No. 11-1 at 5). Plaintiff appears to misunderstand the credibility factor, as recorded audio and medical evidence, unlike witness testimony, do not require in-depth credibility determinations in their presentation to the Court. Indeed, Plaintiff's proffer appears to suggest that this case will not turn on the testimony of fact witnesses but, rather, will be governed by documentary and video evidence.

Indeed, Plaintiff does not identify any fact witnesses or credibility disputes *at all*. Thus, it appears there will be evidence beyond mere witness testimony, and the case will not turn solely on credibility determinations. Accordingly, the fourth *Tabron* factor weighs against the appointment of counsel.

The fifth *Tabron* factor requires the Court to consider whether "the case will require testimony from expert witnesses." *Tabron*, 6 F.3d at 156 (citation omitted). Plaintiff stated in his motion that "[e]xpert psychological and medical testimony will be required." (ECF No. 11-1 at 5). On June 11, 2025, Plaintiff filed a Motion for a court-appointed forensic psychological expert which the Court denied without prejudice on August 12, 2025. (ECF Nos. 10, 35). The Court denied this motion primarily because Plaintiff sought a forensic psychological expert "to conduct his *own* psychological examination." (ECF No. 35 at 3). However, because Plaintiff has claimed that this matter will require expert testimony, the Court foresees that there could be other, more complex factual aspects of this case that may require testimony from expert witnesses. However, at this point, it is still too early to ascertain what types of expert witnesses might be required or whether Plaintiff, proceeding *pro se*, would effectively be able to manage expert discovery on his own. For these reasons, the Court finds that assessment of the fifth *Tabron* factor is premature at this time and is, at best, neutral.

Finally, the Court considers Plaintiff's financial ability to attain and afford counsel. *See Tabron*, 6 F.3d at 156. The Court recognizes that Plaintiff has been granted permission to proceed IFP (ECF No. 3), which is indicative of an inability to afford counsel. *See Montgomery*, 294 F.3d at 505 (finding that approval of a plaintiff's IFP application evinces a plaintiff's inability to afford counsel under the sixth *Tabron* factor if the plaintiff's financial situation has not changed). However, Plaintiff does not claim in his moving papers that he cannot afford to retain counsel. In his motion, Plaintiff states that he hired a lawyer but because "this case is complicated, he stopped."

8

(ECF No. 11-1 at 3). This statement suggests that Plaintiff has the means to afford counsel. However, Plaintiff also alleges that he is currently unemployed, indigent, and has no financial ability to retain private counsel. (ECF No. 11 at 7). Accordingly, the final *Tabron* factor weighs in favor of the appointment of counsel.

In sum, four of the *Tabron* factors weigh against the appointment of *pro bono* counsel, one factor is neutral, and one factor – financial ability – appears to weight in favor of appointment. Significantly, the most important factor, Plaintiff's ability to present his own case, weighs against the appointment of counsel. Further, while the Court is cognizant that Plaintiff may have financial restraints, "indigency alone does not warrant the appointment of counsel absent satisfying the other *Tabron* factors." *Johnson v. De Prospo*, No. 08-cv-1813 (KSH) (PS), 2009 WL 276098, at *3 (D.N.J. Feb. 5, 2009). Therefore, the bulk of the factors weigh against the appointment of counsel and the only factor that may weigh in favor of appointment is not dispositive, particularly when the other factors go against appointment.

### III.  CONCLUSION

In summary, the Court finds that, under the totality of the circumstances, the appointment of *pro bono* counsel is not warranted at this time. Plaintiff's request for appointment of *pro bono* counsel is therefore **DENIED** without prejudice.

Dated: November 7, 2025

                                                  */s/ Stacey D. Adams*
                                                  Hon. Stacey D. Adams
                                                  United States Magistrate Judge